UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| PAUL MAGEE,         )<br>                     )<br>     Petitioner    )<br>                     )<br>     v.              )<br>                     )<br>UNITED STATES OF AMERICA, )<br>                     )<br>     Respondent    )  | CAUSE NO. 3:04-CV-404RM<br>Arising from 3:01-CR-00050(02)RM |

OPINION AND ORDER

Paul MaGee petitions the court to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2255. The government has filed its written response in opposition. A hearing is required only if the facts alleged by the petitioner would entitle him to some relief. <u>Hall v. United States</u>, 371 F.3d 969, 972 (7th Cir. 2004). For the reasons that follow, the court finds that a hearing is necessary only as to some of the issues raised in Mr. MaGee's petition, so Mr. MaGee's petition will be denied in part and a hearing will be scheduled on the issues that remain.

The grand jury returned a six-count indictment against Mr. MaGee for bank robbery and aggravated bank robbery based on his alleged participation in three armed robberies at two federal credit unions in Northern Indiana on February 9, March 16, and April 27, 2001. Two co-defendants, Dion Freeman and Charles Spires, were indicted along with Mr. MaGee as to four of those six counts. Mr. Freeman was indicted for the February 9 and April 27 robberies (counts 1, 2, 5, and 6), and Mr. Spires was indicted for the February 9 and March 16 robberies (counts 1-4). Mr. Freeman and Mr. Spires pleaded guilty and testified against Mr.

MaGee at trial. The jury found Mr. MaGee guilty on counts 1, 2, 5, and 6 (the February 9 and April 27 robberies) and acquitted him on counts 3 and 4 (the March 16 robbery).

Mr. MaGee's habeas petition asserts ten reasons why his conviction was improper. He bases nine of these ten reasons on his view that his trial counsel provided him with ineffective assistance in violation of his Sixth Amendment rights. His final argument is that he is actually innocent of the crimes, and that he at least deserves a new trial in light of three affidavits that contradict some of the testimony of a key government witness.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. CONST. amend. VI. An attorney must not only be present with a criminal defendant at his trial, but must assist the defendant in a way that ensures the trial is fair. Strickland v. Washington, 466 U.S. 668, 685 (1984). A fair trial is one in which the adversarial process functions properly to produce a just result. Id., at 686. To prevail on an ineffective assistance of counsel claim a petitioner must prove the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. at 687.

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland v. Washington, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland v. Washington, 466 U.S. at 697.

The court now addresses each of Mr. MaGee's ten claims.

1. *Motion to Suppress Evidence*

Mr. MaGee says his attorney should have moved to suppress evidence obtained by the government pursuant to his arrest, which, he says, was unlawful because it wasn't supported by probable cause. This claim is frivolous: Mr. MaGee was arrested only after the grand jury indicted him on six counts of bank robbery and aggravated bank robbery, and after a valid warrant was issued for his arrest. The indictment and arrest warrant were supported by the statements Mr. Freeman and Mr. Spires, both of whom claimed to have committed two of these robberies with Mr. MaGee.

Lawful arrests must be supported by probable cause, and probable cause exists when the facts and circumstances at the time of the arrest would lead a reasonable officer to believe the suspect has committed or is committing a crime. Beck v. Ohio, 379 U.S. 89, 91 (1964). Following a grand jury indictment and the issuance of an arrest warrant, the officers who arrested Mr. MaGee would

3

reasonably have believed he had committed a crime. For this reason, any motion to suppress based on the illegality of Mr. MaGee's arrest would have been denied. Counsel is not ineffective for refusing to file a motion the court is likely to reject, United States v. Bond, 77 F.3d 1009, 1014 (7th Cir. 1996), so Mr. MaGee's counsel wasn't ineffective for not challenging his arrest and the evidence obtained pursuant to that arrest.

## 2. *Potential Testimony of Uncalled Alibi Witnesses*

According to Mr. MaGee's petition, his trial counsel refused to locate, interview, and call five disinterested alibi witnesses. He says these witnesses tried to contact his attorney, but their calls went unreturned and counsel made no attempts to contact them. A hearing is required if the petitioner alleges facts that would entitled him to some relief. Hall v. United States, 371 F.3d at 972. If what Mr. MaGee says about these five disinterested alibi witnesses is true, he would be entitled to relief. *See* Sullivan v. Fairman, 819 F.2d 1382, 1391-1392 (7th Cir. 1987) (affirming district court's grant of a habeas petition where trial counsel failed to locate and call five disinterested witnesses whose names and addresses were known, and whose exculpatory testimony would have contradicted prosecution witnesses); *see also* Montgomery v. Petersen, 846 F.2d 407, 413-414 (7th Cir. 1988) (failure to interview and present the testimony of the only disinterested alibi witness in case was ineffective assistance of counsel, especially where case was a "swearing match" between defendant and his accomplice who

4

testified for the prosecution). A hearing is needed so Mr. MaGee can present the testimony of the five "alibi witnesses" to whom his petition refers. Only after hearing what these witnesses would have testified to at trial can the court determine whether a writ of habeas corpus should be granted.

3. *Pretrial Statements of Charles Spires and Shauntee McGee*

Charles Spires and Shauntee McGee both testified for the government at Mr. MaGee's trial. Both gave pretrial statements to the Michigan City Police Department about their interactions with Mr. MaGee at the time of the robberies. Mr. MaGee says his attorney should have introduced these pretrial statements into evidence for the purpose of impeaching Mr. Spires's and Ms. McGee's trial testimony. Even though his counsel didn't introduce these pretrial statements into evidence, counsel used them effectively to impeach both Mr. Spires and Ms. McGee during cross examination. Ms. McGee was impeached as to whether she had ever seen Mr. MaGee before the day of one of the robberies, and as to her description of his physical stature. Mr. Spires, a co-defendant and a more important government witness, was impeached more thoroughly. During his cross examination, Mr. Spires was reduced to describing his pretrial statements as "like half truth and half not truth" and "bull crap" which he had told the police in hopes of getting his "charges dropped from armed bank robbery to just loaning somebody a gun" because he believed he "probably could skate."

5

Counsel's decision simply to use these pretrial statements for impeachment rather than introducing them into evidence cannot overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. at 689. Because Mr. Spires and Ms. McGee were government witnesses, it is likely their pretrial statements contained evidence that would have harmed Mr. MaGee's case. Nothing in the record suggests that withholding these pretrial statements from the jury was anything but competent trial strategy. In any event, counsel effectively used the pretrial statements to impeach these two government witnesses, so Mr. MaGee has made no showing that his defense was prejudiced by counsel's decision.

### 4. *Not Interviewing Prosecution Witnesses*

Mr. MaGee says his counsel was ineffective for not interviewing two witnesses who were subpoenaed by the government to testify at trial: Chapeaka Mack and Aaron Young. As things turned out, the government didn't call Mr. Mack or Mr. Young to the witness stand at trial. According to Mr. MaGee, both witnesses would have testified that he wasn't involved in the March 9 robbery. No March 9 robbery was alleged, so the court assumes Mr. MaGee means to refer to the February 9 robbery for which he was convicted. The government accompanies its brief with an affidavit from Mr. MaGee's trial counsel. In the affidavit, counsel says he decided "as a matter of trial strategy" not to call Mr. Mack or Mr. Young

6

"because it did not appear that there was any testimony" they "could give that would have helped [Mr. MaGee]. I was prepared to thoroughly cross examine each of those witnesses had they been called to testify."

Counsel's affidavit indicates that he had prepared to cross examine Mr. Mack and Mr. Young, but that when the government didn't call them he declined to adopt them as his own witnesses because he believed their testimony wouldn't help his client. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland v. Washington, 446 U.S. at 690. Yet an attorney who doesn't "interview a readily available witness whose noncumulative testimony may potentially aid the defense should not be allowed automatically to defend his omission simply by raising the shield of 'trial strategy and tactics.'" Montgomery v. Petersen, 846 F.2d at 413 (quoting Crisp v. Duckworth, 743 F.2d 580, 584 (7th Cir. 1984)).

Counsel's affidavit doesn't indicate whether he interviewed either Mr. Mack or Mr. Young, or to what degree he investigated their potential testimony. On this record, the court cannot automatically invoke Strickland's "virtually unchallengeable" standard in defense of counsel's trial strategy and tactics. If Mr. Mack and Mr. Young both would have credibly testified that Mr. MaGee was not involved in the February 9 robbery, a reasonable probability might exist that the trial's outcome might have been different. A hearing will allow the court adequately to address Mr. MaGee's claims arising from the potential testimony of these two uncalled witnesses. See Hall v. United States, 371 F.3d at 972 (hearing

is required when petitioner alleges facts that, if true, would entitle him to some relief).

### 5. *Non-use of the "Shooting Incident" Police Report at Trial*

Dion Freeman, one of Mr. MaGee's co-defendants and a key government witness, was the victim in a shooting incident on October 26, 2000. Following the incident, Mr. Freeman gave a statement to the local police in which he identified only one assailant, a man by the name of Jeremiah. Yet on direct examination at trial Mr. Freeman said there were three men who pursued him when he got shot: Jeremiah, Paul MaGee, and Chapeaka Mack. Mr. MaGee now says that his attorney should have introduced the police report into evidence to show that Mr. Freeman changed his story about the shooting incident to include him as one of the attackers.

The thrust of Mr. MaGee's argument is that his attorney should have impeached Mr. Freeman with this prior inconsistent statement. He can't prevail on this argument because his attorney did exactly that. As Mr. MaGee notes in his own petition: "Freeman admitted on cross-examination he told police only Jeremiah was involved in the shooting." His petition also states that "Freeman was vigorously crossed by the defense as to . . . his failure to tell police that movant was involved in the shooting incident back in October of 2000." Even though Mr. MaGee's counsel didn't offer the October 26, 2000 police report into evidence, he effectively used Mr. Freeman's prior statement to impeach him. Because the

impeachment occurred, the court cannot say that counsel's decision not to put the report into evidence fell outside the "wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. at 689.

6. *Interviewing Mr. Freeman's Milwaukee Landlord*

After the April 27, 2001 robbery, Mr. Freeman moved to Milwaukee, Wisconsin, where he moved into an apartment. Mr. Freeman testified at trial that he paid his rent not with money, but by performing work for the landlord. Mr. MaGee argues that his attorney should have interviewed Mr. Freeman's Milwaukee landlord and called him to testify at trial to impeach Mr. Freeman. According to Mr. MaGee, the landlord would have testified that Mr. Freeman had paid cash to rent the apartment.

Counsel's decision not to pursue this landlord in Milwaukee probably falls within the wide range of reasonable attorney conduct contemplated by Strickland, but the court needn't decide that question here because this minor point of potential impeachment isn't the type of evidence on which Mr. MaGee's trial could have turned. Even without calling the Milwaukee landlord who might have contradicted Mr. Freeman's recollection of his rental agreement, counsel thoroughly impeached Mr. Freeman on other, more relevant matters. Mr. MaGee summarizes this impeachment in his own petition: "Freeman was vigorously crossed by the defense as to the statement he made to the Milwaukee police in July of 2001 (regarding the robberies), his own plea agreement with the

9

government, details of his involvment [sic] with the robberies and his failure to tell police that movant was involved in the shooting incident back in October of 2000."

In light of Mr. Freeman's already-thorough impeachment, any marginal benefit Mr. MaGee might have been denied by counsel's decision to omit the Milwaukee landlord testimony doesn't reach the level of prejudice as understood in Strickland. Strickland v. Washington, 466 U.S. at 687. The type of testimony Mr. Freeman's landlord might have offered had nothing to do with the robberies charged in the indictment. This case is unlike Montgomery v. Petersen, 846 F.2d at 412-413, and Sullivan v. Fairman, 819 F.2d at 1391-1393, where the omission of disinterested alibi witnesses justified the granting of a writ of habeas corpus. Mr. Freeman's landlord had absolutely nothing to say about the robberies, and if the omission of his testimony about an unrelated rental agreement prejudiced the defense at all, it didn't prejudice it in a way "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687.

### 7. *VCR's Inability to Play Tape in Slow Motion*

At trial Mr. MaGee's attorney played a video tape from a surveillance camera at one of the credit unions mentioned in the indictment. Captured on the film was co-defendant Dion Freeman robbing the credit union and holding a gun. After the trial concluded, Mr. MaGee mentioned to his attorney that he wished the VCR they had used to display the video tape had been able to play the tape in slow

10

motion. Mr. MaGee now says his counsel's assistance was ineffective for not locating a slow motion VCR, and that he was prejudiced by this because a slow motion display would have shown the jury that Mr. Freeman lied about what kind of gun he used in the robbery.

The government has submitted the affidavit of Mr. MaGee's counsel. In the affidavit counsel states that he wasn't able to use the video as conclusively as he would have liked, but that he was still able to question the government's witnesses about the guns on cross examination. In fact, counsel contradicted Mr. Freeman's description of the gun with Mr. Spires's testimony. Mr. Freeman said the gun he used in both the February 9 and April 27 robberies was a revolver; he identified it as government's exhibit 18A. Mr. Spires, however, said he supplied Mr. Freeman with the gun that was used in the February 9 robbery and that it was not a revolver, and was not the same weapon as government's exhibit 18A.

Mr. MaGee is unable to cite any authority to support his assertion that his counsel was ineffective for not showing the tape in slow motion. Counsel obtained the surveillance video tape; he played it for the jury to see; and his cross examinations of Mr. MaGee's co-defendants produced conflicting descriptions of the gun in question. In light of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," the court cannot find that counsel here was ineffective for not using a slow motion VCR. Strickland v. Washington, 466 U.S. at 689.

8. *Non-use of "Shooting Incident" Police Report to Impeach Mr. Freeman*

Mr. MaGee claims entitlement to a new trial because his counsel didn't use the police report from the October 26, 2000 shooting incident to impeach Mr. Freeman. This is essentially the same claim Mr. MaGee raised in part 5 of his petition (addressed above), and it does not entitle him to relief for the reasons already stated.

9. *Not Calling Two Government Witnesses to Testify*

Mr. MaGee contends his counsel was ineffective for not calling Chapeaka Mack and Aaron Young to testify. The court already addressed this argument in part 4 above where Mr. MaGee objected to his attorney not interviewing these same two potential witnesses. For the reasons stated above the court will hold a hearing for the purpose of learning what, if any, exculpatory testimony Mr. Mack and Mr. Young would have given.

10. *Assertion of Innocence and New Affidavits*

With his final argument, Mr. MaGee asserts that he is actually innocent of all the crimes with which he was charged. Read liberally, his petition argues that if three affidavits contradicting Mr. Freeman's account of the October 2000 shooting incident had been presented at trial, he surely would have been acquitted. Mr. MaGee already raised this argument in his Rule 33 motion for a

new trial. This court denied that motion and the court of appeals affirmed that decision, so Mr. MaGee isn't entitled to relief on this basis.

CONCLUSION

For the reasons stated above Mr. MaGee's petition for a writ of habeas corpus raises some disputed factual issues, so the court will set a hearing on those issues to determine whether he is entitled to relief. His petition for a writ of habeas corpus [docket no. 144 in Cause No. 3:01CR50(2)] is DENIED IN PART insofar as claims 1, 3, 5-8, and 10 entitled Mr. MaGee to no relief. The court reserves its ruling on claims 2, 4, and 9 of the petition until an evidentiary hearing is held.

SO ORDERED.

ENTERED:   July 11, 2005

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

cc:   P. MaGee
      W. Grimmer

13